UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY TERRY,

            Plaintiff,

v.

CITY OF DETROIT and JEFFREY
WAWRZYNIAK, in his individual and
official capacity,

            Defendants.

_____/

Case No. 2:17-cv-11450

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [15]

On May 5, 2017, Plaintiff Larry Terry filed a complaint alleging that Defendant Officer Jeffrey Wawrzyniak violated his Fourth Amendment rights and that Defendant City of Detroit violated his First Amendment rights. The parties proceeded to discovery and, on, December 15, 2017, Defendants filed a motion for summary judgment. The Court reviewed the motion and found that a hearing was unnecessary. ECF 19. For the reasons stated below, the Court will grant Defendants' motion for summary judgment.

### BACKGROUND[1]

On May 5, 2014, Larry Terry conversed with an unnamed minor outside 17745 W. Davison in Detroit, Michigan ("target location"). Terry recognized the boy as his daughter's classmate and agreed to purchase a soda and chips for him. Detroit police officers observed the boy exit the house and retrieve something from Terry (who still sat in his

---

[1] The Court construes the facts in Plaintiff's favor; the construction does not constitute a finding of fact.

car). Officer Wawrzyniak and the six other Detroit police officers[2] wore masks and were prepared to execute a valid search warrant based on suspected drug activity at the target location.

Two unknown officers ("Unknown Officers") removed Terry from his car and placed him in handcuffs. They then searched Terry and his vehicle. The Unknown Officers found two knotted sandwich bags of marijuana and $167.00 in cash on Terry's person. The Unknown Officers then took Terry with them to the house where they tested whether his keys fit the locks. The keys did not fit.

At the same time, the other officers, including Officer Wawrzyniak (collectively "Entry Team"), handcuffed the young man and took him into the house. No force was necessary to enter. The Entry Team secured the house. Upon searching the target location, the Entry Team found 114 individually packaged plastic zipper bags containing marijuana and six knotted sandwich bags containing marijuana. The Entry Team discovered a digital scale, unused sandwich bags, and a cell phone with photos of the young man with firearms at the house.

While the Entry Team searched the house, the Unknown Officers entered the residence with Terry. At this point, Officer Wawrzyniak searched Terry three or four times. Non-serious injuries resulted from Terry's detainment. He complained of "a line on [his wrist]," but he did not bleed. ECF 16-2, PgID 123. He did not suffer any other physical injuries.

---

[2] Plaintiff names only Officer Wawrzyniak as a defendant.

After about one hour,[3] Officer Wawrzyniak issued Terry a citation for loitering in a place of illegal occupation (LIPIO) pursuant to Detroit City Ordinance 38-5-1 ("Ordinance"). The Ordinance makes it a misdemeanor for any person to "loiter in a place of illegal occupation with the intent to engage in such illegal occupation." Terry received a court-appointed lawyer and the ticket was dismissed.

Plaintiff then filed his lawsuit against Officer Wawrzyniak and the City of Detroit for alleged violations of his First, Fourth, and Fourteenth Amendment rights.

## STANDARD OF REVIEW

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment if its resolution would establish or refute an "essential element[] of a cause of action or defense asserted by the parties[.]" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

---

[3]    Terry avers that the officers searched the house for "[a]nywhere from three to four hours" beginning at about "one in the afternoon, about one, 1:30." ECF 16-2, PgID 122, 124. For officer safety and the orderly execution of the search warrant, the officers could detain Terry for the duration of the search—even for a period of several hours. *See, e.g.*, *Muehler v. Mena*, 544 U.S. 93, 99–100 (2005) (noting the permissibility of a three-hour detention of occupants of a house believed to be involved in narcotics transactions).

Based on the record, it would be an unreasonable inference to accept Terry's estimate of the search's length. The police report attached to Plaintiff's response indicates that the officers were "at the base" until 2:30 p.m. receiving briefing for several search warrants. ECF 16-4, PgID 156. The officers apparently executed a different warrant from 2:50 p.m. to 3:50 p.m. before executing the search warrant at 17745 W. Davison. *Id.* The search of the target location apparently lasted only one hour. *Id.* Furthermore, a "Notice of Seizure and Intent to Forfeit" cash seized during the search, which is signed by Plaintiff, lists the time as 4:20 p.m. *Id.* at 143. The Detroit Police Department's arrest report also listed the arrest time as 4:20 p.m. and was entered by Officer Wawrzyniak at 5:39:41 p.m. *Id.* at 137. Moreover, Terry testified that he was in the neighborhood to pick up his daughter from school around "three o'clock, 3:30." ECF 16-2, PgID 122. In light of all the evidence on the record, it is not a reasonable inference that the search lasted three to four hours beginning around 1:30 p.m. Regardless, there is no evidence in the record showing that the search lasted longer than was necessary to execute the search warrant.

In considering a motion for summary judgment, the Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 848 (6th Cir. 2016). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And although the Court may not make credibility judgments or weigh the evidence, *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015), a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252.

## DISCUSSION

I.     Fourth Amendment Claim

Plaintiff avers that Officer Wawrzyniak unlawfully seized him and then unlawfully searched him and his vehicle. The Court will grant summary judgment on Terry's Fourth Amendment claims because (1) Officer Wawrzyniak did not search Terry's vehicle or his person outside of the residence, and (2) Officer Wawrzyniak's search of Terry inside the house did not violate Terry's constitutional rights.

A. Identification of the Proper Defendant

Before addressing the substance of Terry's claims, the Court must first address whether Terry names the proper defendant. To state a viable § 1983 claim, a plaintiff must show that a person acting under color of state law deprived him of a right secured by the Constitution or laws of the United States. *See Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005). In cases like this one, "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir.

4

2010) (citations omitted). To establish liability, a plaintiff "must show that the defendant

was personally involved" in the complained-of conduct. *Burley v. Gagacki*, 729 F.3d 610,

619 (6th Cir. 2013) (quotation marks omitted). Mere presence at the scene, without a

showing of direct responsibility for the alleged constitutional violation, generally will not

subject an officer to liability. *Id.* (citing *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338,

352 (6th Cir. 1984)). Despite the general rule, the Sixth Circuit has been hesitant to rule

against plaintiffs who "fail to allege specific conduct by each officer when the officers'

actions have made them impossible to identify." *Greer v. City of Highland Park*, 884 F.3d

310, 315–16 (6th Cir. 2018).

Here, Officer Wawrzyniak testified that he neither removed Terry from his vehicle,

searched his person, nor searched his vehicle. ECF 16-5, PgID 183–84.[4] Officer

Wawrzyniak was "assigned to the entry team" and focused on entering and securing the

target location. *Id.* at 184. Officer Wawrzyniak later testified, however, that he did not

know whether he searched Terry inside the residence. *Id.* The police report—written by

Officer Wawrzyniak—further corroborates his deposition testimony. The report states that

---

[4] Plaintiff objects to Officer Wawrzyniak's testimony because he (1) had no independent recollection of the events and (2) relied upon a police report at his deposition. *See* ECF 16, PgID 104. The general rule is that content that is categorically inadmissible precludes a finding of summary judgment. *See Flones v. Beaumont Health Sys.*, 567 F. App'x 399, 405 (6th Cir. 2014) (citing *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)). At the summary judgment stage, however, the Court focuses on the admissibility of evidence rather than its form. *See N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997). Here, the information contained in Officer Wawrzyniak's deposition and police report could plausibly be admitted at trial in several ways: (1) as personal knowledge under Fed. R. Evid. 602; (2) if Wawrzyniak's memory fails, the police report could be used to refresh his recollection under Fed. R. Evid. 612; and (3) if the notes fail to refresh Wawrzyniak's recollection, he could still possibly read his report into evidence as a past recollection recorded under Fed. R. Evid. 803(5). Accordingly, the Court may consider Officer Wawrzyniak's deposition testimony at the summary judgment stage.

the "entry team detained" the other individual near the vehicle, "announced [its] presence and purpose and with no response from inside" conducted an "unforced entry" into the target location. ECF 16-4, PgID 137. The entry team then "cleared the location." *Id.* The report also identifies that Officer McCrakin and Sergeant Harris detained and searched Terry outside the house. *Id.* Officer Wawrzyniak thus offers evidence that he neither searched Terry's vehicle nor searched Terry. The evidence is inconclusive, however, regarding whether Officer Wawrzyniak searched Terry inside the house.

Plaintiff testified that two officers removed him from his vehicle. ECF 16-2, PgID 124. He further testified that the officers were wearing masks, which prevented him from identifying them. *Id.* Plaintiff contends that under the Freedom of Information Act that he requested all documents related to the incident, but Defendants stated there were no documents. ECF 16, PgID 102. Plaintiff attached the FOIA request, but the Defendants' alleged response is not on the record. *See* ECF 16-3. Defendants aver that they disclosed the identity of "each and every officer on the scene" during the "very early stages of litigation." ECF 17, PgID 221.

There is no genuine issue of material fact that Officer Wawrzyniak seized Terry or searched him outside the house and his vehicle. Officer Wawrzyniak makes an appropriate showing that he was not outside the location during the initial search. Plaintiff does not offer evidence that creates a genuine issue of material fact to the contrary. Plaintiff's testimony corroborates Officer Wawrzyniak's testimony—they both consistently state that two officers seized Terry and searched him. *Compare* ECF 16-2, PgID 124 *with* ECF 16-4, PgID 137 *and* ECF 16-5, PgID 183–84. Moreover, there is no other evidence that the Defendants' conduct prevented Plaintiff from delineating their actions. Despite

Terry's testimony that the officers wore masks, Plaintiff became aware of the identities of the officers and their apparent roles during discovery. At that juncture, Plaintiff could have amended his complaint and added additional parties, or deposed the other officers. Instead, Plaintiff made a strategic decision to proceed against only Officer Wawrzyniak.

Allowing all of Plaintiff's claims to proceed against only Officer Wawrzyniak could impose liability on only Officer Wawrzyniak for the actions of the other members of the search-warrant team. That outcome contradicts the Sixth Circuit's requirement that the plaintiff "must show that the defendant was personally involved" in the complained-of conduct. *Burley*, 729 F.3d at 619. In cases in which the Sixth Circuit has relaxed the general rule because the defendants prevented the plaintiffs from identifying them, *see, e.g., Burley*, *Greer, Ghandi*, and *Binay*, the plaintiffs sued *all* possible defendants. The Sixth Circuit's decisions presumably relied upon the rationale that at least one member of the group committed the alleged act. But the present case is readily distinguishable. Here, Plaintiff seeks to hold only Officer Wawrzyniak liable for any alleged wrongdoing committed by his fellow officers. Rather than creating a safety net in which the Court guarantees that the wrongdoer is held liable, Plaintiff's chosen tactic would guarantee only that *at least one person* is held liable—regardless of whether that person did anything wrong.

Because there is no genuine issue that Officer Wawrzyniak did not search Terry or his vehicle, the Court will analyze only Terry's Fourth Amendment claims related to the search of his person conducted inside the house.

B. Search of Terry Inside the Target Location

7

Police officers may contemporaneously search a person who is lawfully arrested. The "fact of custodial arrest" gives "rise to the authority to search" the person. *United States v. Robinson*, 414 U.S. 218, 236 (1973); *see Preston v. United States*, 376 U.S. 364, 367 (1964) (noting that when a person is lawfully arrested, the police "unquestionably" "have the right" to conduct a warrantless search of the person).

The individuals that arrested Terry are not parties to the case. The lawfulness of the arrest, therefore, is not an issue immediately before the Court. Lawful arrest is a condition of a search incident to arrest, however. To determine whether the search incident to arrest was appropriate, the Court considers whether the arresting officers lawfully arrested Terry based on probable cause. An officer has probable cause for an arrest if the "facts and circumstances" known to the officer at the time of the arrest are "sufficient to warrant" a reasonably prudent person to believe that an individual "has committed, is committing[,] or is about to commit an offense." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) and *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999), respectively). "[O]nly the probability of criminal activity" is required. *Id.* (quotation omitted).

Here, given the facts and circumstances known to the officers at the time, probable cause existed to arrest Terry. The officers possessed a search warrant for a house suspected of repeated drug activity based on multiple observations of suspected illegal activity sufficient to support the magistrate's finding of probable cause for a search. *See* ECF 15, PgID 71. The facts and circumstances known to the officers at the time of Terry's detention would "warrant a prudent person, or one of reasonable caution" to believe that Terry had committed, was committing, or was about to commit a crime. *Crockett*, 316 at

8

580. Because the officers possessed probable cause to arrest Terry, the arrest was reasonable and did not violate the Fourth Amendment.[5]

Because the other officers lawfully arrested Terry, Officer Wawrzyniak did not violate Terry's constitutional rights by searching him inside the house incident to his lawful arrest.

Moreover, Officer Wawrzyniak searched Terry incident to the execution of a valid search warrant that was supported by probable cause. The search warrant noted that a "seller may be present during the actual execution of the search warrant." ECF 15, PgID 72. Although that only is not enough to justify a search of Terry, officers' observation of Terry's suspected drug transaction and Terry's proximity to the target location further justified Officer Wawrzyniak's search.[6]

C. Qualified Immunity

Qualified immunity is a threshold question the Court addresses early in the proceeding to avoid the costs and expenses of trial. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The privilege grants "immunity from suit rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity analysis contains two components. First, the Court must consider whether the government actor's

---

[5] Terry protests that he did not know the target location was designated a drug house and provides lawful explanations for his presence at the scene. *See* ECF 16, PgID 101–02. Those facts, however, were not known to the officers at the time of the arrest.

[6] The parties do not address the issue, but the officers may have had further justification to detain and search Terry under the precedents allowing the warrantless detention and search of individuals on the premises of a location during the execution of search warrant. *See Michigan v. Summers*, 452 U.S. 692 (1981); *Muehler v. Mena*, 544 U.S. 93 (2005); *Los Angeles Cty. v. Rettele*, 550 U.S. 609 (2007); *and Bailey v. United States*, 568 U.S. 186 (2013) (collectively identifying the exception and the manner, duration, and scope constraints of the subsequent detention and search).

conduct violated a constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Second, if a violation occurred, the Court must determine whether the right was clearly established. *Id.* Whether a right is clearly established must be considered with specificity—the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Because Officer Wawrzyniak's conduct here did not violate a constitutional right, he is entitled to qualified immunity.

## II.   First Amendment Claim

Plaintiff lacks standing to bring his First Amendment claim. Federal courts are courts of limited jurisdiction. The standing doctrine helps identify justiciable cases. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing contains three elements. First, plaintiff must have suffered an injury in fact—"an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Id.* (citation and quotation marks omitted). Second, a causal connection must exist: the injury must be "fairly traceable to the challenged action of the defendant[.]" *Id.* (citation and alterations omitted). Finally, it must be likely that "the injury will be redressed by a favorable decision." *Id.* (citation omitted).

A plaintiff carries the burden to prove standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (noting that standing cannot be "inferred argumentatively from averments in the pleadings" and that a plaintiff must "clearly [] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute") (internal quotations omitted). "Because the standing issue goes to this Court's subject matter jurisdiction, it

can be raised *sua sponte.*" *Cent. States of Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (6th Cir. 2005).

Terry lacks standing for his First Amendment claim for two separate reasons. Under one theory, Terry alleges injuries, but those injuries are not "fairly traceable" to the alleged conduct. Terry alleges that Defendant City of Detroit "violated Plaintiff's First Amendment rights by enforcing" the Ordinance. The City's conduct allegedly caused Terry "to suffer unlawful arrest, detention, search of [his] person, anguish, embarrassment and humiliation." ECF 1, PgID 3. Terry's alleged injuries are not "fairly traceable" to the Defendant's challenged action. The officers issued Terry a citation after he was detained and searched. The alleged injuries each occurred *prior* to the City's enforcement of the Ordinance; as such, the injuries could not have been caused by or traced to the Ordinance's enforcement. Rather, Terry's alleged injuries relate to the officer's alleged Fourth Amendment violations.

Under a second theory, Terry failed to allege an injury in fact. Terry states that he received "a ticket under Detroit City Ordinance 38-5-1" but "the ticket was summarily dismissed" during a pretrial hearing. *Id.* at 2. He was neither charged with a misdemeanor nor otherwise penalized. *See* ECF 16-2, PgID 123. Terry did not suffer an invasion of a legally protected interest. Terry failed, therefore, to plead facts sufficient to satisfy his burden of proving standing.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [15] is **GRANTED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 16, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 16, 2018, by electronic and/or ordinary mail.

s/ David Parker
Case Manager